IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Lynn A. Doles,                    :

      Plaintiff,             :

    v.                          :      Case No. 2:10-cv-521

Commissioner of Social            :      JUDGE JAMES L. GRAHAM
Security,                                Magistrate Judge Kemp

      Defendant.             :

<u>REPORT AND RECOMMENDATION</u>

I.  <u>Introduction</u>

Plaintiff, Lynn A. Doles, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for a period of disability and social security disability benefits and for supplemental security income.  Those applications were both filed in June, 2004, and alleged that plaintiff became disabled on May 22, 2003.  She later amended that onset date to August 1, 2004.

After initial administrative denials of her claim, plaintiff was given a videoconference hearing before an Administrative Law Judge on September 13, 2007.  In a decision dated September 28, 2007, the ALJ denied benefits.  That became the Commissioner's final decision on April 12, 2010, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on August 12, 2010.  Plaintiff filed her statement of specific errors on November 1, 2010.  The Commissioner filed a response on February 7, 2011, and plaintiff did not file a reply brief.  The case is now ready to decide.

II.  <u>Plaintiff's Testimony at the Administrative Hearing</u>

Plaintiff's testimony at the administrative hearing is found

at pages 369 through 404 of the record.  The following is the gist of that testimony.

It is somewhat difficult to summarize the testimony given by plaintiff at the administrative hearing because of the way in which the hearing was conducted.  A substantial part of the hearing consisted of medical and psychological advice given to plaintiff by both the Administrative Law Judge and the medical expert.  However, plaintiff did testify that she had neck surgery in 2003, which prevented her from becoming paralyzed but which did not completely alleviate pain in her shoulders and neck.  She said that she had had low back pain since 1980.  She reported going through a custody battle which created significant stress and led to her psychological hospitalization in September, 2004.

Plaintiff's testimony indicated that she had worked with troubled youths and as a substance abuse counselor, including in a prison setting, and that she had stopped college just short of obtaining her bachelor's degree.  She described suffering from depression and low self-esteem.  She also said that she sweated excessively in public and had exercise intolerance and heat intolerance.  Additionally, she described problems with gastric swelling, visual changes, and with elimination.  She reported that standing in line for an hour was too stressful for her and caused pain in her back and neck.  She expressed a desire to be able to do more activities and to return to work if she could figure out how to accomplish those goals.

### III.  The Medical Records

The medical records and reports are located at pages 130 through 349 of the record.  Because plaintiff's claim focuses exclusively on the way in which her psychological disorders were evaluated, the Court will limit its summary to those records.

Plaintiff was evaluated on October 4, 2004 by Dr. Yee, a psychologist.  Plaintiff described herself as disabled due to

fibromyalgia and chronic pain.  She reported a September, 2004 hospital admission for mental health problems and said that she had been involved with outpatient counseling off and on since 1986.  She stopped working in May, 2004 due to medical problems. Her affect was described as reactive and of a tearful and depressed quality and she showed a limited range of emotional expression.  She appeared to be depressed to a moderate degree. She reported suicidal thoughts but no plan.  Her energy level was low and she did not experience mood swings.  She described some anxiety.  There was no evidence of somatic concerns.  Dr. Yee diagnosed an affective disorder and a pain disorder associated with both psychological factors and a general medical condition. She thought plaintiff would be able to understand, remember, and carry out simple instructions and was mildly impaired in her ability to perform simple repetitive tasks.  Her concentration and persistence was fair and her pace was moderate.  She also had a moderate impairment of her ability to deal with work stress. (Tr. 130-35).

Dr. Melvin, a psychologist, completed a mental residual functional capacity assessment form of November 17, 2004.  The only moderate limitations he identified were in the areas of maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace, and setting realistic goals were making plans independently of others.  He stated that his conclusions were consistent with the conclusions of Dr. Yee.  (Tr. 137-154).  He also did not diagnose a somatoform disorder.

Plaintiff saw Dr. Lettvin at the Scioto Paint Valley mental health center on October 19, 2004.  He noted that plaintiff had been hospitalized for one day on September 15, 2004 for severe depression and suicidal ideation.  She described a history of

-3-

depression treated by medication.  Her insight and judgment
appeared to be fairly poor.  His impression was a mood disorder
and a probable bipolar affective disorder as well as a probable
personality disorder.  He believed she needed individual therapy
and thought she might benefit from starting on a mood stabilizer.
(Tr. 224-28).  Plaintiff saw Dr. Lettvin again in February, 2005
at which time he noted that some of her medications might be
producing many of her physical and cognitive symptoms.  At that
time, the impressions included rule out somatization disorder.
(Tr. 216-18).

Plaintiff saw Dr. Freeman on September 1, 2006, complaining
of pain everywhere in her body.  She reported multiple diagnoses
and multiple evaluations, none of which had helped her.  She
described low back pain, neck pain, groin pain, and leg pain.
Dr. Freeman described her as suffering from chronic whole-body
pain and thought she was significantly impacted by multiple
psychological factors.  He also noted that she had very poor
coping strategies for dealing with pain.  He believed her pain
complaints were out of proportion to any true physical or
diagnostic findings.  (Tr.  312-314).

An administrative law judge other than the one who
ultimately heard and decided the case requested an opinion from
Dr. Snyder, a clinical psychologist, concerning plaintiff's
mental impairment.  After reviewing the records, Dr. Snyder
concluded that plaintiff's impairments equaled both section 12.04
and 12.07 of the Listing of Impairments.  He felt that she had
marked limitations in the areas of activities of daily living and
concentration, persistence or pace.  (Tr. 323-27).

IV.  The Medical Expert's Testimony

Dr. Newman, a medical expert, testified at the
administrative hearing.  He thought that plaintiff could do some
aspects of sedentary work and some aspects of light work (Tr.

-4-

398).  She was restricted in lifting and bending.  Id.  She also
needed a sit-stand option.  (Tr. 400).  He did not address any
mental impairments.  (Tr. 401).

### V.  The Vocational Expert's Testimony

A vocational expert, Ms. Bose, also provided testimony
during the administrative proceedings.  Her testimony begins at
page 401 of the record.  She was asked about a person limited as
described by Dr. Newman who could also not work at any high
stress jobs.  Such a person could not, according to Ms. Bose, do
any of plaintiff's past work due to the stress level involved,
but she could do a number of sedentary unskilled positions such
as cashier, general office clerk, or food and beverage order
clerk.  If that same person was unable to tolerate even a
moderate amount of job stress, she could not work.

### V.  The Administrative Law Judge's Decision

The administrative decision appears at pages 15 through 27
of the administrative record.  The important findings in that
decision are as follows.

The Administrative Law Judge found, first, that plaintiff
met the insured status requirements of the Social Security Act up
to December 31, 2008.  The ALJ next found that plaintiff had not
engaged in substantial gainful activity from her alleged onset
date forward.  The ALJ found that plaintiff did have several
severe impairments including degenerative disc disease, status
post fusion at C5-7, depression, anxiety, fibromyalgia, and
obesity.  He did not find, however, that any of her impairments
met or equaled any impairment described in the Listing of
Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

As far as plaintiff's limitations are concerned, the ALJ
found that plaintiff had the residual functional capacity to
perform sedentary work, with the ability to lift and carry up to
10 pounds, but with the ability to stand, walk and sit for up to

six hours each in a workday.  Further, she could not do high stress work.

Finally, the ALJ found that with these limitations, plaintiff could not do her past work.  However, relying on the Medical-Vocational Guidelines and the vocational expert's testimony, the ALJ found that plaintiff could perform such jobs as cashier, general office clerk, and food and beverage order clerk.  Consequently, he denied her claim for benefits.

VII.  <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, plaintiff raises a single issue.  She contends that the Commissioner erred in not finding that her psychological impairments met either Section 12.04 or Section 12.07 of the Listing of Impairments.  The Court reviews the administrative decision under this legal standard:

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be  conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>,

340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

The two sections of the Listing of Impairments identified in plaintiff's statement of errors are 12.04 and 12.07. They describe, in pertinent part, the following disorders:

12.04 *Affective Disorders*. Characterized by a disturbance in mood, accompanied by a full or partial manic or depressive syndrome.... The required level of severity is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
                              * * *
A. Medically documented persistence, either continuous or intermittent, of at least one of the following:

1. Depressive disorder characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities;
b. Appetite disturbance with change in weight;
c. Sleep disturbance;
d. Psychomotor agitation or retardation;
e. Decreased energy;
f. Feelings of guilt or worthlessness;
g. Difficulty concentrating or thinking;
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking.
                              ***
AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living;
2. Marked difficulties in maintaining social functioning;
3. Marked difficulties in maintaining

-7-

concentration, persistence, or pace; or
    4.  Repeated episodes of decompensation, each of
extended duration.

    12.07 *Somatoform Disorders.*  Physical symptoms for
which there are no deomonstrable organic findings or
known physiological mechanisms.
    The required level of severity for these disorders
is met when the requirements in both A and B are
satisfied.

    A.  Medically documented by evidence of one of
the following:

    1. A history of multiple physical symptoms of
several years duration, beginning before age 30, that
have caused the individual to take medication
frequently, see a physician often and alter life
patterns significantly; or

    2.  Persistent nonorganic disturbance of one or
the folowing:
    a.  Vison; or
    b.  Speech; or
    c.  Hearing; or
    d.  Use of a limb; or
    e.  Movement and its control ...; or
    f.  Sensation(e.g. diminished or heightened).

    3.  Unrealistic interpretation of physical signs
or sensations associated with the preoccupation or
belief that one has a serious disease or injury;

AND
    B.  Resulting in at least two of the following:

    1.  Marked restriction of activities of daily
living;
    2.  Marked difficulties in maintaining social
functioning;
    3.  Marked difficulties in maintaining
concentration, persistence, or pace; or
    4.  Repeated episodes of decompensation, each of
extended duration.

    The ALJ did consider whether plaintiff's mental impairment,
which he characterized as depression, met or equaled either of

these sections of the Listing. Both Listings incorporate the "B" criteria which focus on a mental impairment's impact on activities of daily living, social functioning, concentration, persistence, and pace, and deompensation in work or work-like settings. The ALJ found that plaintiff had only mild restrictions in her activities of daily living because she could clean, cook and shop, and that her social functioning was only moderately impaired because she harbored harmful thoughts toward others and had no social life. He further noted that no mental status examination showed marked impairments in concentration, persistence or pace, and that there was no evidence of decompensation. He specifically rejected Dr. Snyder's opinion because her allegations were not "somatic." It is unclear exactly what the administrative decision meant by that, because the ALJ accompanied that explanation with a discussion about whether plaintiff suffered from multiple sclerosis and that further testing was needed to rule out that diagnosis, so perhaps he was alluding to the fact that there might be medical conditions which could explain some or all of plaintiff's symptoms and that they would therefore not be the product of a somatoform disorder.

Plaintiff takes issue with the ALJ's analysis of her somatoform disorder, arguing that virtually every treating source thought that her complaints of physical limitations were out of proportion to the medical findings and that she was unduly preoccupied with her physical condition. Thus, she contends that the failure to recognize a somatoform disorder lacks substantial support in the record. She further argues that the evidence shows an onset date at or about the time of her September, 2004 hospitalization, and asserts that Dr. Snyder's opinion as to the severity of her impairments should have been adopted, but his suggested onset date of October 1, 2005 should be rejected.

-9-

While the ALJ's failure to recognized that there was substantial evidence of a somatoform disorder in this record may or may not have been error, the more important question is whether his conclusion that she had not satisfied the "B" criteria – which apply equally to the condition he did recognize, depression, and the one he did not – finds substantial support in the record.  If it did, the failure to include a somatoform disorder of less than Listing severity as a condition from which plaintiff suffers would be, at most, harmless error, given that the failure to find that her psychological conditions satisfied the "B" criteria is plaintiff's only assignment of error here.

The Commissioner's responsive memorandum correctly points out that Dr. Snyder was the only medical source who expressed the opinion that plaintiff suffered from marked impairments in two of the four areas addressed by the "B" criteria, those being the areas of activities of daily living and ability to maintain adequate concentration, persistence and pace.  Dr. Snyder did not cite to any  evidence in the record from other treating or evaluating mental health professionals to support his opinion, and there appears to be none.  Dr. Yee found no marked limitations in any of these areas, and the state agency reviewers specifically concluded that plaintiff's psychological impairments did not meet or equal the Listings.  Dr. Lettvin also did not express any view that plaintiff had marked limitations in at least two of these areas, and he suspected that her medications and her use of them could be causing some of her symptoms.  Thus, although there is fairly strong evidence that plaintiff suffers from some symptoms which cannot be explained by objective medical evidence, and that she may well have a somatoform disorder, there is almost no evidence that it causes a marked impairment in two of the four areas addressed in the "B" criteria.  Consequently, there is no basis for concluding that the ALJ erred by failing to

find that her impairments were of the severity described in either section 12.04 or section 12.07.  See, e.g., Johnson v. Chater, 1995 WL 646325, *12 (N.D. Ind. October 13, 1995) (holding that the ALJ was entitled to rely on state agency reviewers' conclusions about whether an impairment satisfied the "B" criteria and that evidence that these criteria were not met for one of sections 12.04 and 12.07 necessarily meant that they were not met for the other).

## VIII.  Recommended Decision

For all of the reasons stated above, it is recommended that the plaintiff's statement of specific errors (Doc. #12) be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District

Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge